UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROYLON ANTONIO GREEN,

                Petitioner,

v.                                      Civil Action No.
                                            9:08-CV-00659 (GLS)

DEBORAH SCHULT,

                Respondent.

_____

APPEARANCES:

FOR PETITIONER:

Roylon Antonio Green, 10631-007
 Petitioner *Pro Se*
Butner Low
Granville - B
Federal Correctional Institution
P.O. Box 999
Butner, North Carolina 27509

FOR RESPONDENT:

Office of the United States Attorney    Charles E. Roberts, Esq.
100 S. Clinton Street                            Asst. United States Attorney
Syracuse, New York 13261-7198

**GARY L. SHARPE, U.S. DISTRICT JUDGE**

## **ORDER**

    Petitioner Roylon Antonio Green, an inmate at the Federal

Correctional Institution in Butner, North Carolina,[1] seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  In 1998, Petitioner was sentenced in the District of Columbia Superior Court to a term of 21 years in prison following his guilty plea to armed kidnaping.  *See* Dkt. No. 1. Petitioner does not contest his conviction. Rather, he asserts that the United States Parole Commission denied him due process in rescinding parole because (1) the Commission considered hearsay evidence against him; and (2) he was not provided with adequate written notice specifying the information the Commission intended to consider at his hearing.  Dkt. No. 1 at 3-4. Petitioner further states that the Commission abused its discretion in finding that he was a serious risk to the community.  *Id.* at 4. Respondent has filed a response, together with a memorandum of law and the relevant records. Dkt. No. 11. Petitioner filed a Traverse on November 24, 2008.  Dkt. No. 15. For the reasons that follow, the petition is **denied and dismissed.**

---

[1] This Court has jurisdiction to decide this case because when Petitioner filed his petition, he was confined at the Federal Correctional Institution ("FCI") at Ray Brook, New York, which is located in this district.  Petitioner's later transfer from FCI Raybrook to a different federal correctional institution does not divest this Court of jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004); *Tribble v. Killian*, 632 F. Supp. 2d 358, 361 (S.D.N.Y. 2009).

**I.     Relevant Background**

The following factual summary is derived from the records attached to the petition and to Respondent's Response. Petitioner became eligible for parole on January 13, 2004.  *See* Dkt. No. 11, Ex. A at 2 (Sentence Monitoring Computation Data as of Dec. 19, 2007).  A parole hearing was held on March 11, 2004.  *Id.* at Ex. D (Hearing Summary).  Parole was denied due to the nature of the underlying offense and Petitioner's conduct while in prison.  Petitioner was continued to a three-year reconsideration hearing set for March 2007.  *Id.* at 3.  The Commission explained that its decision was based upon several factors: (1) prior to the kidnaping, the victim obtained a civil protection order against Petitioner; (2) the violent nature of the offense for which Petitioner was convicted; (3) that Petitioner wrote the victim letters while in prison, and called her at work on December 13, 1998, and threatened to kill her during that call; (4) two misbehavior reports involving threatening and attempting to assault staff; and (5) Petitioner was expelled from a comprehensive drug program in September 2003.  Dkt. No. 11, Ex. D at 3; Ex. E (Notice of Action).

Petitioner was reconsidered for parole release on January 29,

2007. *See* Dkt. No. 11, Ex. F (Hearing Summary).  After a reconsideration hearing, parole was granted effective October 2, 2007. *Id.* at 2. Petitioner was released to a halfway house on June 5, 2007 for adjustment into the community prior to the effective date of his parole. Dkt. No. 11, Ex. L at 4*.* Petitioner was advised not to have any contact or communication with the victim of the original offense. Dkt. No. 11, Ex. G (Notice of Action).

In late September 2007, the Chief of the Sex Offense and Domestic Violence Section of the United States Attorney's Office for the District of Columbia notified the Commission in an email that Petitioner contacted the victim on September 20, 2007, by telephone while the victim was at work  *See* Dkt. No. 11, Ex. H (Department of Justice Email Correspondence). According to the information provided from the victim, Petitioner asked her how she and her family were doing, if she was married and if she had children.  *Id.* Although the victim stated that Petitioner did not threaten her during the call, she stated that she was fearful of Petitioner, and requested a order requiring him to stay away from her workplace.  *Id.*

In response to this information, the Commission reopened

Petitioner's case for a reconsideration hearing on whether he should be paroled. Dkt. No. 11, Ex. I (Memorandum); Ex. J (Notice of Action). In a letter dated October 5, 2007, Petitioner was advised that a special reconsideration hearing was scheduled and that his parole date had been retarded due to "new adverse information (you contacted the victim of your original offense)." Dkt. No. 11, Ex. K (Letter from Commission to Petitioner, dated Oct. 5, 2007). Petitioner was removed from the halfway house, designated to a federal correctional facility, and was transferred to FCI Ray Brook.

    On February 14, 2008, the special reconsideration hearing was held. Petitioner appeared via videoconferencing from FCI Ray Brook. *See* Dkt. No. 11, Ex. L (Hearing Summary). Petitioner denied having any contact with the victim. *Id.* at 1-2. At the close of the hearing, the hearing examiner warned Petitioner not to have any contact with the victim. The examiner recommended rescinding Petitioner's parole and ordering his release after he served an additional nine months. *Id.* at 2. Upon administrative review, a second Commission examiner disagreed, finding that Petitioner appeared to be a "more serious risk that his prior guidelines indicated." *Id.* at 3. The examiner found the victim's statement

regarding the September 2007 phone call to be more credible than Petitioner's denial that he had any contact with her. *Id.* The examiner recommended that parole be rescinded and that Petitioner be continued to a three-year reconsideration hearing set for February 2011. *Id.*

Another Executive Hearing Examiner reviewed these findings on March 6, 2008. *See* Dkt. No. 11, Ex. L at 3-4. The examiner found that although Petitioner did not threaten the victim during the September 2007 phone call, he questioned her about personal matters, including her birthday. The Commission perceived these questions to be threatening. *Id.* at 4. The examiner also noted that the victim wrote a letter to the Commission, dated December 12, 2007, in which she outlined the phone call and her concerns regarding Petitioner's release from custody. *Id.* at 4.[2] The examiner recommended rescinding Petitioner's parole date because he remained a serious risk to the community based upon the nature of the underlying offense, his behavior while incarcerated, and his recent contact with the victim, noting that "it is clear that [Petitioner] does not plan to stay away from the victim if released." *Id.*

On March 13, 2008, the Commission officially rescinded Petitioner's

---

[2] No copy of this letter has been provided to the Court.

6

parole and continued him to a three-year reconsideration hearing scheduled for February 2011.  Dkt. No. 11, Ex. M (Notice of Action). On April 8, 2008, Petitioner attempted to appeal that decision.  However, because Petitioner is a prisoner subject to a violation of the District of Columbia Code, there is no administrative appeal available to him.  *Id.*

This petition followed.

## II. <u>Discussion</u>

Review of parole commission decisions is "extremely limited, because the commission has been granted broad discretion to determine parole eligibility." *Crutchfield v. U.S. Parole Com'n*, 438 F. Supp. 2d 472, 476 (S.D.N.Y. 2006)(quoting *Bialkin v. Baer*, 719 F.2d 590, 593 (2d Cir.1983)). The Second Circuit has ruled that the "appropriate standard for review of the commission's decisions is whether there has been an abuse of discretion." *Bialkin*, 719 F.2d at 593.  The Commission abuses its discretion only where there is no rational basis in the record for its decision. *Id.*; *Iuteri v. Nardoza*, 732 F.2d 32, 37 (2d Cir. 1984); *Cole v. Harrison*, 271 F. Supp. 2d 51, 54 (D.D.C. 2002).

The Commission exercises authority over District of Columbia Code

violators pursuant to section 11231 of the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law 105-33, 111 Stat. 712, and D.C. Code § 24-409. *See* 28 C.F.R. § 2.70 (a).  The regulations that govern the Commission with respect to District of Columbia Code violators are set forth in 28 C.F.R. §§ 2.70 to 2.107. Some of the regulations that apply to federal prisoners have either been specifically made applicable to District of Columbia Code offenders under 28 C.F.R. § 2.89, or have been incorporated by reference in 28 C.F.R. §§ 2.70 to 2.107.

In order for due process protection to apply, there must be a protected liberty or property interest at stake, which may arise from the Due Process clause itself or from state law. *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The Supreme Court has explicitly held that the Due Process Clause does not provide a liberty interest in parole. *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Although "a state may ... establish a parole system ... it has no duty to do so." *Id.* at 7. Therefore, in order for Petitioner to maintain a liberty interest

in this case, it must arise from District of Columbia law.

The Supreme Court has found that a state's parole-determination provisions may create an expectation of parole that is entitled to some measure of constitutional protection. For example, a state statute gives rise to a liberty interest where it mandates that parole be granted or denied based on certain factors. *See Greenholtz*, 442 U.S. at 11-12 (finding that the Nebraska parole statute created a protected liberty interest in parole); *Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (holding that a Montana parole statute creates "a liberty interest protected by the Due Process Clause" because it specifically provides that the Parole Board "shall" release the inmate when certain findings prerequisite to release are made.).*³*

---

³ In *Sandin,* a case dealing with prison disciplinary proceedings, the Supreme Court criticized the methodology of *Greenholtz* and *Allen*. The *Sandin* Court directed courts to focus on the "nature of the deprivation" rather than the "language of the particular regulation." *Sandin,* 515 U.S. 472, 481 (1995). The Court held that if the challenged treatment represents a "dramatic departure from the basic conditions of [the prisoner's] sentence" or "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," an inmate's liberty interests are implicated. *Id.* at 484-85. The District of Columbia Circuit Court has concluded that *"Sandin* only alters the liberty-interest analysis applicable to claims relating to 'the day-to-day management of prisons,' and that it does not apply to parole-related claims." *Blair-Bey v. Quick*, 151 F.3d 1036, 1047, n.9 (D.C. Cir. 1998)(quoting *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C.Cir.1996)("Until the [Supreme] Court instructs us otherwise, we must follow *Greenholtz* and *Allen* because, unlike *Sandlin*, they are directly on point. Both cases deal with a prisoner's liberty interest in parole; *Sandin* does not."). Since Petitioner is a District of Columbia Code violator, this Court will follow the District of Columbia Circuit Court's reasoning. *See, e.g., Brown v. United States Parole Com'n.*, No 02 Civ. 7639, 2003 WL 194206, at *4 n.6 (S.D.N.Y. Jan. 28, 2003)(citing *Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (1996) (citing *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477

The District of Columbia Court of Appeals has concluded that although due process procedures are mandated for parole *revocation*, the same protections do not apply to parole *rescissions* because District of Columbia Code violators do not acquire a liberty interest as a result of an initial order granting parole, and therefore that order may be subject to rescission without affording violators due process at any time prior to release from custody. *Smith v. Quick,* 680 A.2d 396, 398 (D.C. Cir. 1996)(inmate's placement in a halfway house and the District of Columbia's parole scheme do not "combine to create a constitutional liberty interest"); *Brown-Bey v. Hyman*, 649 A.2d 8, 9 (D.C. Cir. 1994)(no liberty interest in a parole order that was rescinded because the inmate escaped from a halfway house before parole began); *see also Bey v. Zoley,* No. 09-0284, 2009 WL 350596, at *1 (D.D.C. Feb. 12, 2009)("District of Columbia prisoners do not have a constitutionally protected liberty interest in parole and therefore have no protections under the due process clause with respect to parole determinations or procedures."); *Johnson v. United States*, 590 F. Supp. 2d 101, 109 (D.D.C. 2008)("Nor does the plaintiff state a claim with respect to the

---

(1989)).

rescission of parole. He did not 'acquire a liberty interest as a result of the initial order that granted him parole and that order was subject to rescission without affording him due process at any time prior to his release from custody.' ")(quoting *Cole,* 271 F. Supp. 2d at 53 ("Because no liberty interest was at stake at his parole rescission hearing, petitioner has not stated a due process claim regarding the rescission decision.").[4] *See also Ford v. Grondolsky*, No. 06-10-DCR, 2006 WL 3792585, at *4 (E.D. Ky. Dec. 20, 2006)(applying District of Columbia law to a District of Columbia Code violator and finding that "nothing in the applicable parole suitability or rescission regulations creates a Due Process liberty interest, and hence no due process hearing was required before Ford's parole was rescinded.").

Here, although a parole date had been set, Petitioner was not yet released on parole when the Commission retarded his parole date. The

---

[4] The District of Columbia Circuit's position is contrary to that of the Second Circuit's view on due process protections for federal inmates facing parole rescission. The Second Circuit has held that *federal* prisoners are entitled to some procedural due process at a parole rescission hearing, including written notice, a hearing at which the defendant may confront witnesses and present evidence, and a written statement of the reasons for rescinding parole. *Drayton v. McCall*, 584 F.2d 1208, 1219-20 (2d Cir. 1978); *see Green v. McCall*, 822 F.2d 284, 288-89, 291 (2d Cir.1987) (finding liberty interest in Commission's presumptive parole date and noting that "[p]lainly the Court's concern for federalism has no bearing on the current validity of *Drayton*, since *Drayton* and the present case involve the federal system itself, not state systems."). However, as previously noted, since Petitioner is a District of Columbia Code violator, this Court will apply District of Columbia law to his claims. *See, e.g., Ford*, 2006 WL 3792585; *Brown,* 2003 WL 194206.

11

fact that Petitioner was placed in a halfway house in June 2007 does not change that result. *See Harris v. Efforts,* No. 10-0785, 2010 WL 1946892, at *1 (D.D.C. May 14, 2010)(rejecting due process claim with respect to halfway house placement); *Johnson*, 590 F. Supp. 2d at 109 (same); *Cole*, 271 F. Supp. 2d 53 (same)(citing *Smith,* 680 A.2d at 398). Because it is clear that the District of Columbia does not recognize a due process right stemming from its parole statute and regulations, no liberty interest was at stake in this case.[5]  Therefore, the Commission did not violate the due process clause when it rescinded Petitioner's parole date and extended his rehearing by 36 months. *Brown-Bey,* 649 A.2d at 9;

---

[5] Upon initial review of this case, it was unclear whether 28 C.F.R. § 2.34 applied and, if so, whether Petitioner's right to due process was violated under that section. *See* Dkt. No. 19.  In an Order dated March 3, 2009, the Court requested further briefing on this issue.  *Id.* Upon further consideration, the Court holds that section 2.34 does not apply in this case.  Section 2.34 provides that the Commission may rescind parole of a *federal* prisoner who has been "found in violation of institution rules by a Discipline Hearing Officer or is alleged to have committed a new criminal act at any time prior to the delivery of the certificate of parole [.]" *Id.* at § 2.34(a).  Section 2.34 does not, by its own language, apply to District of Columbia Code violators, nor has it been incorporated and made applicable to District of Columbia Code violators.  *See* 28 C.F.R. § 2.89. Moreover, even if section 2.34 applied to Petitioner as a District of Columbia Code violator, his parole date was not rescinded for either violating institutional rules or for committing a new criminal act. Instead, Petitioner's case was reopened pursuant to 28 C.F.R. § 2.28(f) (*see* Dkt. No. 11, Ex. J), a section that applies to both federal prisoners *and* District of Columbia Code violators, and permits the Commission to reconsider a prisoner's case where it has received "new and significant adverse information." *See* 28 C.F.R. § 2.75(e)("Notwithstanding a previously established reconsideration hearing, the Commission may reopen any case for a special reconsideration hearing, as provided in § 2.28, upon the receipt of new and significant information concerning the prisoner.").  Accordingly, since section 2.34 does not apply, the Commission may not be said to have violated any due process requirements contained in that section.

*Cole*, 271 F. Supp. 2d at 53.[6]

**WHEREFORE**, after reviewing Petitioner's submissions and the relevant law, and for the reasons stated herein, it is

**ORDERED**, that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED;** and it is

**ORDERED**, that no certificate of appealability shall issue in this case because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is

**ORDERED,** that the Clerk of the Court shall serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

July 20, 2010

*[signature]*
United States District Court Judge

---

[6] While there is "some authority for the proposition that exceptionally arbitrary governmental conduct may in itself violate the due process clause, whether or not a liberty interest is at stake", there is nothing in the record before this Court that would "meet so high a standard." *Blair-Bey,* 151 F.3d at 1048 n.11.